IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS -- EASTERN DIVISION

| | |
|---|---|
| RAPAK, LLC, and<br>DS SMITH PLASTICS LIMITED<br><br>        Plaintiffs,<br><br>v.<br><br>LIQUI-BOX CORPORATION,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REDACTED**
**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiffs, Rapak, LLC and DS Smith Plastics Limited, for their complaint against Liqui-Box Corporation allege as follows:

1. This is a patent infringement action involving U.S. Patent No. 6,612,545 and 6,702,337 and 6,893,000.

**PARTIES**

2. Plaintiff, Rapak, LLC ("Rapak") is a limited liability company organized and existing under the laws of the State of Illinois and has a principal place of business at 1201 Windham Parkway, Romeoville, Illinois 60446.

3. Plaintiff, DS Smith Plastics Limited (DSS) is a limited liability company organized and existing under the laws of England and Wales with its principal place of business at Madleaze Industrial Estate, Bristol Road, Gloucester, GL1 5SG United Kingdom.

4. Defendant Liqui-Box Corporation ("LB") is a corporation formed under the laws of the State of Ohio, having a principal office at 901 East Byrd St., Richmond, Virginia 23219.

1

5. Third parties relevant to the allegations herein include DuPont Liquid Packaging Systems, Inc. ("DuPont") and Dr. Pepper/Seven Up, Inc. ("DPSU").

**JURISDICTION AND VENUE**

6. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1338(a) and venue lies in this district by virtue of 28 U.S.C. §§ 1391 and 1400(b).

7. LB does business within this district.

**FACTUAL BACKGROUND**

8. On September 2, 2003, United States Letters Patent No. 6,612,545 ("the '545 Patent") was duly and legally issued to DSS by the United States Patent and Trademark Office for an invention entitled "Screw On Connector." A true and correct copy of the '545 Patent is attached as Exhibit A hereto.

9. On March 9, 2004, United States Letters Patent No. 6,702,337 ("the '337 Patent") was duly and legally issued to DSS by the United States Patent and Trademark Office for an invention entitled "Spout For Screw On Connector." A true and correct copy of the '337 Patent is attached as Exhibit B hereto.

10. On May 17, 2005, United States Letters Patent No. 6,893,000 ("the '000 Patent") was duly and legally issued to DSS by the United States Patent and Trademark Office for an invention relating to methods of use of the beverage dispensing system. A true and correct copy of the '337 Patent is attached as Exhibit C hereto.

11. The '545 Patent and '337 Patent relate to spout designs covering a beverage dispensing system. The '000 Patent relates to methods of use of that system. Collectively, the '545 Patent, '337 Patent and '000 Patent are referenced herein as the "DSS Patents".

12. DSS licensed Rapak exclusively to use the DSS Patents.

13. On June 17, 2004, Rapak sued LB in the Northern District of Illinois, Eastern Division, captioned <u>Rapak LLC, v. DuPont Liquid Packaging Systems, Inc. and Dr. Pepper/Seven Up, Inc.</u>, Civil Action No. 04 C 4049 ("2004 Lawsuit") for infringement of the '337 and '545 Patents.

14. At the time of the 2004 Lawsuit, LB was a subsidiary of DuPont.

15. The 2004 Lawsuit was dismissed pursuant to a settlement agreement.

16. The terms of that settlement agreement are confidential.



23. From 2006 through 2014, the commercial fees paid by LB to Rapak steadily increased reflecting the increased sales of the PRODUCTS by LB.

24. Except for 2009, the commercial fee payments increased every year, such that by 2012, annual payments exceeded $500,000.00.

25. In February 2015, LB stated that it was deducting from its commercial fee payments all sales made outside the TERRITORY during the calendar year of 2014.

26. This was the first time Plaintiffs learned that LB was selling the PRODUCTS outside the TERRITORY, ███████████████████████████████████

███████████████████████████

███████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

30. LB agreed to use Auditor 1 as the auditor to perform the audit and signed a non-disclosure agreement with Auditor 1 in January 2016.

31. By late January 2016, LB had begun to provide documents to Auditor 1.

32. On January 22, 2016, however, Lou Marmo, LB's Chief Financial Officer, objected to providing the requested information on the basis that it "would put us [LB] in a compromising position from an anti-trust perspective."

33. In response, on January 22, 2016, Auditor 1 asked for all information that LB believed was "acceptable" for purposes of complying with the audit.

34. LB would not provide any further information to Auditor 1, but rather insisted on a new auditor.

35. In May 2016, LB agreed to use Auditor 2.

36. Rapak retained Auditor 2 to perform the audit.

37. On September 26, 2016, Auditor 2 provided to Rapak a report of its findings (the "Report"). A true and correct copy of the Report is attached as Exhibit E.

38. The Report is confidential per the terms of a nondisclosure agreement between Auditor 2 and LB and the engagement letter between Auditor 2 and Rapak.

39. ███████████████████████████████████
███████████████████████████████████
███████████████

40. ███████████████████████████████████
███████████████████████████████████
███████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████
███████████████████████████████████
███████████████████████████████████

███████████████████████████████████████████████

███████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

45. As a result of LB's continued resistance to providing documents to Auditor 2, on August 17, 2016, Rapak sent a breach of contract notice to LB notifying LB that it was in breach of the Agreement and that LB had 30 days to cure. *See* Notice of Breach, attached as Exhibit F.

46. LB failed to cure.

47. As a result, Rapak terminated the License Agreement as of September 16, 2016.

48. On September 16, 2016, LB's counsel sent an email to Rapak's counsel stating that LB did not recognize the termination and that it would continue to sell the PRODUCT that incorporates DSS' patents. A true and correct copy of the email dated September 16, 2016 is attached as Exhibit G.

49. LB has, on information and belief, continued to sell the PRODUCT that incorporates DSS' patents beyond the termination date of September 16, 2016.

50. These sales unlawfully and intentionally infringe the DSS Patents in this district and elsewhere by making, using, offering for sale and/or selling the inventions of the DSS Patents.

51. On information and belief, LB has induced infringement and/or has contributed to the infringement of the DSS Patents in this district and elsewhere.

52. The wrongful acts of LB alleged herein were undertaken without authority and without license from Plaintiffs.

53. LB had actual notice of DSS Patents and actual notice of the termination of the License Agreement, and therefore its acts of infringement have been willful and wanton, in blatant disregard for the intellectual property rights of DSS and Rapak.

54. The wrongful acts of LB as alleged herein have occurred and will continue to occur, in this district and throughout the United States.

55. Plaintiffs have suffered damage by reasons of the acts of infringement by LB and will suffer additional and irreparable damage unless LB is enjoined by this Court from continuing its acts of direct infringement, inducement of infringement and/or contributory infringement.

WHEREFORE, Plaintiffs request that this Court enter a judgment in favor of Plaintiffs and against Liqui-Box and award to Plaintiffs the following relief:

A. Ordering, adjudging and decreeing that LB has directly infringed the '545, '337 and '000 Patents in violation of 35 U.S.C. §271(a);

B. Ordering, adjudging and decreeing that LB have induced the infringement of the '545, '337 and '000 Patents in violation 35 U.S.C §271 (b);

C. Ordering, adjudging and decreeing that LB's acts of infringement, inducing infringement and contributory infringement of the '545, '337 and '000 Patents were committed willfully and knowingly;

D. Enjoining, both preliminarily and permanently, LB and each of its parents, principals, officers, directors, agents, affiliates, servants, attorneys, employees and all others in privity with them from infringing the '545, '337 and '000 Patents; and

E. Awarding to Rapak such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DSS SMITH PLASTICS LIMITED
RAPAK, LLC

By: /s/Channing Blair Hesse
One of Their Attorneys

Channing Blair Hesse
ARDC #6224487
Garelli, Grogan, Hesse & Hauert
340 W. Butterfield Rd., Suite 2A
Elmhurst, IL 60126
chesse@gghhlaw.com
(630) 833-5533

## VERIFICATION

Under penalty of perjury under the laws of the United States of America and the State of Illinois, I declare that I have read the foregoing Complaint, and that the facts alleged therein are true and correct to the best of my knowledge and belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

*[signature]*

KEVIN GROGAN
Chief Executive Officer, Flexible Packaging

Dated this 25th day of September, 2016